IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:25-CV-1579

| | |
|---|---|
| DRAWFIRE, LLC, and PAUL J. INFERRERA,<br><br>        Plaintiffs,<br><br>v.<br><br>TAYLORED CONTROL SYSTEMS, LLC, NATHAN TAYLOR, AND HERNANDEZ CONSULTING INC.,<br><br>        Defendants. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff DrawFire, LLC, complaining of Defendants Taylored Control Systems and Hernandez Consulting Inc., alleges:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff DrawFire, LLC ("DF") is a limited liability company organized under the laws of the State of North Carolina with its principal place of business located in Leland, North Carolina.

2. Plaintiff Paul J. Inferrera ("Inferrera") is the owner of DF. Inferrera has significant experience drawing designs for fire alarm systems and possesses certifications from the National Institute for Certification in Engineering Technologies ("NICET") demonstrating his expertise. Inferrera's NICET certifications include Fire Alarm Systems Level IV and Special Hazard Suppression Systems Level II.

3. Upon information and belief, Defendant Taylored Control Systems, LLC ("TCS") is a limited liability company organized under the laws of the State of North Carolina with its principal place of business located at 5229 US Highway 301 South, Hope Mills, NC 28348 in Cumberland County, North Carolina.

4. Upon information and belief, Defendant Nathan Taylor ("Taylor") is a citizen and resident of Cumberland County, North Carolina. Taylor is one of the owners of TCS.

5. Defendant Hernandez Consulting Inc. ("HC") is a for-profit corporation organized under the laws of the State of Florida with its principal place of business

located at 2740 St. Louis St., Suite A, New Orleans, LA 70119 in Orleans Parish, Louisiana.

6. This Court has subject matter jurisdiction over this matter as it arises under the copyright and trademark laws of the United States. Thus, jurisdiction is proper under, at a minimum, 28 U.S.C. §§ 1331 & 1338, 15 U.S.C. § 1051 *et seq.*, and 17 U.S.C. § 101 *et seq.* To the extent DrawFire's claims also arise under North Carolina law, this Court also has jurisdiction under 28 U.S.C. § 1367.

7. Personal jurisdiction over Defendants is proper under N.C. Gen. Stat. § 1-75.4(1), (3), and (4).

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to DF's claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

## FACTS

### DrawFire's Business

9. DF is a veteran-owned, North Carolina business founded in 2012 that provides fire alarm system design and consultation services.

10. DF enables companies without in-house design staff to bid large commercial, industrial, or federal projects that require design and installation of fire alarm systems. DF provides a complete design package for such systems, so that they meet the specifications of the end-user. In return, DF is paid by the job for its services.

3

11. Drawing such systems requires qualifications per the National Fire Alarm Signaling Code and the federal United Facilities Code (UFC) demonstrated by certification from the National Institute for Certification in Engineering Technologies ("NICET"). For that reason, end-users for commercial, industrial, or federal projects often require engineering technicians to possess certain levels of NICET certification.

12. DF has certified engineering technicians that possess the credentials and expertise necessary to design fire alarm systems. Inferrera is one such engineering technician.

13. DF's fire alarm system drawings are original and reflect the client's specified needs for the project accurately and with appropriate data. The plans are often computer-aided design ("CAD") files, which are used by electronic drafting applications to produce blueprints.

14. When DF draws plans for file alarm systems, it will occasionally be asked to make changes to the plans as the project needs change. The changes to fire alarm systems, like other configuration decisions, usually are made at the direction of a professional engineer.

**Defendants Hire DrawFire to Prepare Fire Alarm System Plans for Camp Lejeune**

15. Upon information and belief, in or around 2021, the United States government hired HC as a general contractor. HC was hired to construct certain residential facilities for military families on the Camp LeJeune United States Marine

4

Base, including Onslow Beach Cabanas ("Cabanas") and Onslow Beach Apartments ("Apartments").

16. Upon information and belief, the United States government required HC to install fire alarm systems for the Cabanas and Apartments that were designed by a qualified engineer, and installed in accordance with shop plans drawn by a NICET certified technician.

17. HC subcontracted TCS provide fire alarm systems for the Cabanas and the Apartments. TCS sells security systems but, upon information and belief, does not have an in-house design team with appropriate certifications to design the fire alarm system for the Cabanas and Apartments.

18. In October 2021, TCS retained DF to develop fire alarm shop drawings for the Cabanas and the Apartments.

19. On or about October 26, 2021, DF created original shop drawings for the Fire Alarm and Detection System for the Cabanas (the "Cabanas Drawings"). The Cabanas Drawings are DF's original work, drawn by Claire E. Messa and designed by Paul J. Inferrera.

20. On or about November 17, 2021, DF created original shop drawings for the Fire Alarm and Detection System for the Apartments (the "Apartments Drawings"). The Apartment Drawings are DF's original work, drawn by Claire E. Messa and designed by Paul J. Inferrera.

**DrawFire Protects Its Intellectual Property**

21. In February 2022, DF was contacted by Jean-Michael Johnson, an employee of HC. According to Johnson, TCS modified the Cabanas Drawings and Apartments Drawings and provided those modified drawings to HC without DF's knowledge or consent.

22. After learning that TCS had modified the Cabanas Drawings and Apartments Drawings, DF registered its trademarks.

23. On March 31, 2022, DF filed to register one of its trademarks. A copy of the USPTO trademark registration is attached to the complaint and incorporated by reference as **Exhibit A**. The trademark consists of the word "DrawFire" in standard characters without claim to any particular font style, size, or color:

# DrawFire

24. On June 28, 2022, DF filed to register another of its trademarks. A copy of the USPTO trademark registration is attached to the complaint and incorporated by reference as **Exhibit B**. The trademark consists of the letters "DF" with a target scope at the upper left portion of the "D":



25. For ease of reference, DF hereinafter refers to its trademarks described in paragraphs 23 and 24 as the "Registered Marks."

26. In addition to the Registered Marks, Inferrera uses a common law trademark to indicate the source of designs and shop plans he prepares and approves. One such trademark is Inferrera's professional credentials (the "Credentials"), which demonstrate Inferrera's knowledge, expertise, certifications, and approval, as well as a consistent quality, all relative to the plans to which his Credentials are affixed. An example of the Credentials is provided below:

```
PAUL J. INFERRERA, SET
NICET CERTIFICATION ID 121316
FIRE ALARM SYSTEMS LEVEL IV
SPECIAL HAZARD SUPPRESSION
SYSTEMS LEVEL II
VALID THROUGH 1/1/2026
```

27. Drawings with the Credentials affixed indicate that Inferrera has personally reviewed and approved the designs of the relevant fire alarm system contained in the shop plans.

28. At the request of the United States government and/or HC, DF revised the Cabanas Drawings on February 13, 2023, and April 24, 2023. The revisions were drawn by Claire E. Messa and designed by Paul J. Inferrera.

29. The Cabanas Drawings are affixed with the Credentials and one or more of the Registered Marks.

30. DF provided the Cabanas Drawings to TCS.

31. At the request of the United States government and/or HC, DF revised the Apartments Drawings on March 23, 2022, June 13, 2022, September 21, 2022, and June 2, 2023. The revisions were drawn by Claire E. Messa and designed by Paul J. Inferrera.

32. The Apartments Drawings display Inferrera's Credentials, and one or more of DF's Registered Marks were affixed.

33. The Apartments Drawings also contain the following notice (the "Copyright Notice") at the bottom:

> The drawing, and any related materials are the sole property of DrawFire, LLC. The drawing may be used only for this specific project, and shall not be loaned, or reproduced in any form without the expressed written consent of DrawFire, LLC. ©2023 DrawFire, LLC. All rights reserved. The DF logo and DrawFire are registered trademarks of DrawFire, LLC, and any reproduction is prohibited.

34. DF provided the Apartments Drawings to TCS.

35. In the course of making changes to the Cabanas Drawings and Apartments Drawings, DF questioned some of the revisions requested by Defendants, such as removing carbon monoxide detectors at the request of HC. Defendants' requested modifications to the designs for the fire alarm systems in the Cabanas and Apartments create safety risks for marines and their families that will use these facilities for vacation.

36. Ultimately, DF raised its concerns about HC's directions with the United States government. Upon information and belief, when it became clear to Defendants that DF would not rubber stamp Defendants' modifications without question, Defendants decided to modify the Cabanas Drawings and Apartments Drawings themselves.

**Defendants Alter DrawFire's Copyrighted Work**

37. Around the same time in spring of 2023 when DF provided TCS with the Cabanas Drawings and Apartments Drawings with DF's revisions, Nathan Taylor disclosed to Inferrera how he had previously revised DF's drawings without DF's consent.

38. Taylor explained that he and TCS had imported PDFs of the Apartments Drawings and Cabanas Drawings to Adobe Illustrator, altered the Apartments Drawings and Cabanas Drawings, and exported the modified versions. Taylor further explained that TCS made these modifications in collaboration with HC.

39. At no time had DF authorized or otherwise consented to TCS altering DF's Apartment Drawings and/or Cabanas Drawings.

40. DF instructed that TCS not revise and reissue the Apartments Drawings and Cabanas Drawings using DF's name, likeness, and credentials without DF's knowledge or consent.

41. In March 2025, Nick Williams at TCS requested DF update the as-built drawings for the Cabanas and Apartments. Along with this request, Williams provided versions of DF's Apartments Drawings and Cabanas Drawings that had been altered by TCS and HC in the manner described by TCS.

42. Among other things, TCS admitted to changing device counts and locations. Defendants also removed DF's Registered Marks from the Revised Apartments Drawings and Revised Cabanas Drawings, but left Inferrera's Credentials on the drawings.

43. Upon information and belief, the altered plans provided by TCS in March 2025 were submitted by Defendants to the government.

44. Upon information and belief, by leaving Inferrera's Credentials on the altered plans despite removing DF's Registered Marks, TCS intended for the government to rely on the Credentials as a representation that the altered plans had been prepared by Inferrera, who holds a NICET certification, when in fact material aspects of the altered plans were not prepared by Inferrera or anyone else holding a NICET certification.

45. On July 18, 2025, Nathan Taylor at TCS and Paul Inferrera at DF spoke regarding TCS's alterations. Taylor admitted that Nick Williams and John-Michael Johnson at HC were creating altered versions of the Revised Apartments Drawings and Revised Cabanas Drawings.

46. Taylor also provided altered versions of the Revised Apartments Drawings and Revised Cabanas Drawings dated July 18, 2025. The meta-data from these altered versions showed:

    a. On July 5, 2024, Taylor whited out DF's Registered Marks from the Revised Apartments Drawings.

    b. On July 18, 2025, Taylor removed the Copyright Notice from the Revised Apartments Drawings.

    c. On July 18, 2025, Taylor again whited out DF's Registered Marks from the Revised Apartments Drawings.

47. Upon information and belief, Defendants have submitted the March 2025 and July 2025 altered versions of the Revised Apartments Drawings and Revised Cabanas Drawings to the United States government. In so doing, they have passed off DF's work as their own and misrepresented to the government the certifications and qualifications of the persons altering the drawings.

## COUNT I
### Copyright Infringement — 17 U.S.C. § 501 *et seq.*
### Against All Defendants

48. Plaintiffs incorporate herein all factual allegations made above.

49. The Apartments Drawings are an original work created by DF.

50. DF owns the copyright in the Apartments Drawings.

51. Effective May 2, 2025, DF registered its copyright in Apartments Drawings. A copy of DF's copyright registration is attached to the Complaint and incorporated by reference as **Exhibit C**.

52. DF provided Defendants with access to the Apartments Drawings. Specifically, DF provided Defendants with the Apartment Drawings pursuant to its contract with TCS in 2021 and each time DF revised the Apartment Drawings.

53. Defendants have violated DF's exclusive rights in the Apartments Drawings by (1) reproducing the Apartments Drawings, (2) distributing the Revised Apartment Drawings, and (3) preparing derivative works based upon the Apartment Drawings, all without DF's consent.

54. Specifically, after DF registered its copyright, Defendants used PDF software to alter and reissue infringing fire alarm system designs for the Apartments that are substantially similar to Plaintiff's Apartments Drawings.

55. The infringing drawings replicate Plaintiff's original fire alarm system designs contained in the Apartment Drawings, with additional adjustments from Defendants.

56. Defendants' conduct has directly and proximately harmed Plaintiff.

57. Plaintiff is entitled to actual or statutory damages pursuant to 17 U.S.C. § 504.

58. The Court should also allow Plaintiff to recover its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT II
### Removal of Copyright Management Information — 17 U.S.C. § 1202
### Against All Defendants

59. Plaintiffs incorporate herein all factual allegations made above.

60. The Apartments Drawings and DF's revisions thereto include the following copyright management information:

    a. The box on the cover page of the Apartments Drawings called the "Drawing Title" describing the work (i.e., "Title Sheet, Symbol Legend, Drawing Index, Cable Legend, Input/Output Matrix, Riser and General Notes");

b. The name of and other identifying information about DF, the author and copyright owner of the Apartments Drawings; and

c. The Copyright Notice setting out DF's notice of copyright and the terms and conditions for use of the Apartments Drawings.

61. Defendants, without the authority of DF or the law, intentionally removed and/or altered the copyright management information conveyed with the Apartments Drawings.

62. Upon information and belief, Defendants have distributed copies of the Apartments Drawings to the United States Marine Corp., knowing that the copyright management information included with the Apartments Drawings had been removed and/or altered without the authority of DF or the law.

63. Defendants knew or had reasonable grounds to know that removing or altering the copyright management information from the Apartments Drawings will induce, enable, facilitate, or conceal Defendants' infringement of DF's copyright in the Apartments Drawings. Specifically, Defendants removed and altered to copyright management information from the Apartments Drawings to enable, facilitate, and conceal their infringement of the Apartments Drawings in their submissions to the United States Marine Corps.

64. In doing so, Defendants further violated 17 U.S.C. § 506(d) ("Any person who, with fraudulent intent, removes or alters any notice of copyright appearing on a copy of a copyrighted work shall be fined not more than $2,500.").

65. Defendants' conduct has directly and proximately harmed DF.

66. DF is entitled to actual or statutory damages pursuant to 17 U.S.C. § 1203(b)(3), (c).

67. The Court should also allow DF to recover its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(4), (b)(5).

## COUNT III
### Reverse Passing Off — 15 U.S.C. § 1125(a)
### All Defendants

68. Plaintiffs incorporate herein all factual allegations made above.

69. The Cabanas Drawings and Apartments Drawings, as well as the Registered Marks, originated with DF.

70. By removing the Registered Marks from the Cabanas Drawings and Apartments Drawings, Defendants falsely designated the origin of these works as their own.

71. A substantial number of consumers, including the United States Marine Corps. and patrons of the Cabanas and Apartments, are likely to be misled by Defendants' false designation of origin.

72. Defendants' removal of the Registered Marks is likely to create confusion, mistake, and deception. Specifically, Defendants' actions will deceive customers into believing that Defendants, rather than DF, created the Cabanas Drawings and Apartments Drawings.

73. As a direct and proximate result of Defendants' removal of the Registered Marks, Defendants deprived DF of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the Cabanas Drawings and Apartments Drawings.

74. DF is entitled to damages and costs incurred as a result of Defendants' willful conduct.

75. This is an exceptional case under the Lanham Act, 15 U.S.C. § 1117, entitling DF to recover its reasonable attorneys' fees.

## COUNT IV
## False Association — 15 U.S.C. § 1125(a)
## All Defendants

76. Plaintiffs incorporate herein all factual allegations made above.

77. In the course of his work preparing the Cabanas Drawings and Apartments Drawings for DF, Inferrera affixed both sets of drawings with the Credentials.

78. The Credentials are a word, term, name, symbol or combination thereof, originating from Inferrera. The Credentials indicate Inferrera reviewed and approved the drawing of the fire alarm systems contained in the Cabanas Drawings and Apartments Drawings.

79. Defendants created derivative, infringing designs based upon the Cabanas Drawings and Apartments Drawings. Defendants kept the Credentials in their infringing designs.

80. Defendants' retention of the Credentials on its infringing designs was both a false designation of origin and a false and misleading representation of fact. Inferrera never reviewed or approved of Defendants' changes to the Cabanas Drawings and Apartments Drawings contained in Defendants' infringing designs.

81. Defendants used the Credentials in interstate commerce. Specifically, the infringing designs were created and used in the course of carrying out HC's construction of the Cabanas and Apartments at Camp Lejeune for the United States Marine Corps.

82. Defendants' use of the Credentials was made in the context of providing these goods and services to the United States government, which requires shop plans for fire alarm systems installed in projects such as the Cabanas and Apartments be drawn by a NICET certified technician.

83. Upon information and belief, Defendants submitted their infringing designs to the United States government.

84. Defendants' use of the Credentials in their infringing designs is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Inferrera with Defendants' infringing designs.

85. Specifically, Defendants' use of the Credentials indicates that an appropriately certified technician (Inferrera) reviewed and approved the infringing designs when in fact Defendants created them and submitted them to the United States government without Inferrera's review or approval.

86. Defendants' manipulation of the Cabanas Drawings and Apartments Drawings is likely to cause confusion as to whether Inferrera reviewed or approved of Defendants' alterations made in their infringing designs.

87. Defendants' misuse of Inferrera's Credentials injures Inferrera's commercial interest in his professional reputation. By misrepresenting the extent of Inferrera's involvement in the creation of the plans for the fire alarm systems for the Cabanas and Apartments, Inferrera is exposed to professional and reputational harm from shoddy design choices on the part of Defendants (such as Defendant HC's request to remove carbon monoxide detectors from Apartments Designs) that are not properly documented and improperly attributed to Inferrera.

88. Inferrera is entitled to damages and costs incurred as a result of Defendants' willful conduct.

89. This is an exceptional case under the Lanham Act, 15 U.S.C. § 1117, entitling Inferrera to recover his reasonable attorneys' fees.

## COUNT V
### Unfair Competition — N.C. Gen. Stat. § 75-1.1
### All Defendants

90. Plaintiffs incorporate herein all factual allegations made above.

91. Defendants have engaged in the following unfair and deceptive trade practices:

   a. Reproducing and creating derivative works from the Cabanas Drawings, then submitting the Cabanas Drawings to the United States Marine Corps.,

all while misrepresenting that the infringing designs were reviewed and approved by Inferrera;

b. Retaining Inferrera's Credentials on drawings infringing upon the Cabanas Drawings;

c. Reproducing and creating derivative works from the Apartments Drawings, then submitting the Apartments Drawings to the United States Marine Corps., all while representing that the infringing designs were reviewed and approved by Inferrera;

d. Retaining Inferrera's Credentials on drawings infringing upon the Apartments Drawings;

e. Removing DF's Registered Marks from the Cabanas Drawings;

f. Removing DF's Registered Marks from the Apartments Drawings; and

g. Such additional acts as may be shown in discovery.

92. Defendants' unfair and deceptive acts have occurred in and affected commerce. More specifically, Defendants' conduct construction of properly designed fire safety systems at Camp Lejeune.

93. Defendants' actions described above have proximately caused Plaintiffs injury within the State of North Carolina and elsewhere.

94. Plaintiffs are entitled to recover their damages caused by Defendant's actions, and for such damages to be trebled pursuant to N.C. Gen. Stat. § 75-16.

95. As described above, Defendants have willfully engaged in these practices and unwarrantedly refused to cease and desist their unlawful actions. Thus, Plaintiffs are also entitled to an award of Plaintiffs' costs and reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A. That the Court enter judgment for Plaintiffs and against Defendants.

B. That Plaintiffs have and recover from Defendants the full amount of actual or statutory damages authorized by law, in an amount to be proven at trial.

C. For an order directing that the aforesaid amounts be trebled or otherwise multiplied or enhanced as authorized by law.

D. For reasonable attorneys' fees, costs, and interest as authorized by law.

E. For such other, further, or different relief as this Court may deem just and appropriate.

Respectfully submitted, this the 25th day of November, 2025.

> BROOKS, PIERCE, McLENDON,
> HUMPHREY & LEONARD, L.L.P.
>
> */s/* William A. Robertson
> Thomas G. Varnum
> North Carolina State Bar No. 38567
> tvarnum@brookspierce.com
> William A. Robertson
> North Carolina State Bar No. 53589
> wrobertson@brookspierce.com
> 115 N 3rd St #301
> Wilmington, NC 28401
> Telephone: (910) 444-2000
> *Attorneys for Plaintiffs DrawFire, LLC and Paul J. Inferrera*